**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charles Jordan, Jr., | No. CV-18-03259-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the partial denial of Plaintiff Charles Jordan, Jr.'s application for Title II disability insurance benefits by Defendant Social Security Administration. Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial, and the Court now considers Plaintiff's Opening Brief (Doc. 20, "Pl. Br."), the Defendant's Response (Doc. 23, "Def. Br."), Plaintiff's Reply (Doc. 16), and the Administrative Record (Doc. 17, "R."). Because the Court finds the decision free of legal error and supported by substantial evidence, it affirms.

## I.    BACKGROUND[1]

Plaintiff filed applications for Title II disability insurance benefits and Title XVI supplement security income on November 30, 2015 for a period of disability beginning October 1, 2014. (R. at 16.) The applications were denied initially on March 21, 2016, and upon reconsideration on August 30, 2016. (R. at 16.) Plaintiff requested a hearing which

---

[1] The Court omits a detailed summary of the medical evidence and hearing testimony and instead will reference particular evidence and testimony in its analysis as appropriate.

was held on April 24, 2018 before an administrative law judge ("ALJ"). (R. at 16.) On June 11, 2018, the ALJ issued her decision finding Plaintiff disabled as of March 6, 2017 (R. at 15–28), which was upheld by the Appeals Council on August 13, 2018 (R. at 1–3).

In finding the Plaintiff not disabled prior to March 6, 2017, the ALJ relied on the opinions of a consultative examiner, Dr. James Huddleston, and reviewing psychological consultants who each opined that Plaintiff was capable of work consisting of "simple and some detailed tasks" and "limited contact with the public and coworkers." (R. at 23–24.) She rejected the opinion of Plaintiff's treating physician, Dr. Donald Holland. (R. at 25.) The ALJ's later finding of disability as of March 6, 2017 was supported by the opinion of Plaintiff's treating physician, Dr. Ivan Engel, who opined that Plaintiff would be off task greater than 21% of an eight-hour workday, and the testimony of a vocational expert, who opined that an individual with the Plaintiff's limitations who would be off task for at least 16% of the workday would be precluded from all work. (R. at 25, 58–59.)

Plaintiff brings this appeal alleging that the ALJ committed various legal errors in finding him disabled as of March 6, 2017.[2] (Pl. Br. at 1.) Plaintiff proffers a number of arguments as to why the ALJ's decision should be reversed, many of which raise common legal issues which are addressed below.

This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II.    LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider

---

[2] Plaintiff's date last insured ("DLI") is December 31, 2015. (R. at 20.)

the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).[3]

## III. ANALYSIS

### A. The ALJ properly considered medical opinion evidence.

An ALJ must evaluate every medical opinion in the record. 20 C.F.R. § 404.1527(c). The general rule is that the greatest evidentiary weight is given to opinions of treating physicians; lesser weight is given to opinions of non-treating, examining physicians; and the least weight is given to opinions of non-treating, non-examining physicians. *See Garrison*, 759 F.3d at 1012; *see also* 20 C.F.R. § 404.1527(c). Opinions of treating physicians are entitled to the greatest weight because a treating physician "is employed to

---

[3] At step one, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987); *see also* 20 C.F.R. § 404.1527(c)(2). In assessing how much weight to give any medical opinion, the ALJ considers: the length, nature, and extent of the treatment relationship (if any); the frequency of examination (if any); the extent to which the opinion is supported by medical signs and laboratory findings; the consistency of the medical with the record as a whole; the physician's specialization; and "other factors." 20 C.F.R. §§ 404.1527(c)(2)– 404.1527(c)(6).

If a conflict exists between medical opinions, the ALJ must resolve it. *Morgan*, 169 F.3d at 601. If the ALJ assigns lesser weight to a controverted opinion of a treating or examining physician, the ALJ must articulate "specific and legitimate reasons supported by substantial evidence." *Lester*, 81 F.3d at 830. An ALJ may reject "the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957; *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (affirming rejection of a treating physician's opinion that "was in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of [claimant's] medical condition, and was based on [claimant's] subjective descriptions of pain"). An ALJ satisfies the "substantial evidence" requirement by providing a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012. Additionally, "opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957.

### 1. The ALJ articulated a specific and legitimate reason supported by substantial evidence for assigning "little weight" to the opinion of Dr. Donald Holland, a treating physician.

Dr. Holland, a psychiatrist, treated Plaintiff from January 2015 to January 2016. (R. at 472–488.) In an assessment dated more than two years later, February 11, 2018,

Dr. Holland opined, through checking appropriate boxes, that Plaintiff had "severe"[4] psychiatric impairments that precluded him from being able to work an eight-hour work day. (R. at 568–569.) Specifically, he opined that Plaintiff had "severe" limitations in his ability to do the following on a sustained basis in a routine work setting: understand, carry out and remember instructions; respond appropriately to supervision; respond appropriately to co-workers; respond to customary work pressures; and perform simple tasks. (R. at 568.) Furthermore, he opined that Plaintiff had "severe" impairment in his ability to relate to other people, "severe" restrictions in his ability to do daily activities, "severe" deterioration in personal habits, and "severe" constriction of interest. (R. at 568.) Dr. Holland indicated that these opinions were based on his treatment notes and that the restrictions and limitations were in existence on or before December 31, 2015, Plaintiff's DLI. (R. at 569.)

The ALJ, however, determined that this assessment was "not consistent" with his treatment notes and assigned it "little weight." (R. at 25.) The inconsistency, the ALJ noted, was that "on several occasions in 2015 and 2016, Dr. Holland indicated that the claimant was going [sic] very well." (R. at 25.) Indeed, the record shows that on multiple occasions, in fact, at all but three of the eight appointments, Dr. Holland noted Plaintiff was "doing well" or "doing very well." (R. at 475, 477, 479, 483, 487.) At one such appointment, Dr. Holland noted that Plaintiff was also "motivated" and "free from depression." (R. at 475.) However, in some instances, Plaintiff was "doing well until he stopped his medications three weeks ago . . . and got into a fight with a coworker" (R. at 477) and was "doing well until he got into a fight with a coworker and lost his job . . . and felt the other medications were not helping" (R. at 479). At every appointment, Dr. Holland noted Plaintiff had organized thought process, average insight, and average judgment. (R. at 472–488.) The ALJ referenced all of the above in her decision and ultimately concluded that while "claimant's symptoms waxed and waned . . . overall, he was doing fairly well." (R. at 23.)

---

[4] Based on a scale of "none," "mild," "moderate," "moderately severe," and "severe." (R. at 568.)

Nowhere in the treatment notes does Dr. Holland comment on Plaintiff's ability to do daily activities or note any deterioration in his personal habits. To the contrary, Dr. Holland noted that Plaintiff's general intellectual functioning was "average," and he had "average" insight and judgment as well (R. at 472–488.) Thus, the overall clinical picture of the individual painted by Dr. Holland's treatment notes is not the same "severely" compromised individual painted by his assessment.

Plaintiff, however, contends that the ALJ "was not qualified, as an administrative adjudicator, to provide her medical opinion that [Plaintiff] was 'doing well' despite Dr. Holland's assessment." (Pl. Br. at 15.) Plaintiff further contends that the ALJ should not have considered Dr. Holland's treatment notes in concluding that Plaintiff was "doing well." (Pl. Br. at 16.) In support, Plaintiff cites *Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007), which states: "The primary function of medical records is to promote communication and recordkeeping for health care personnel–not to provide evidence for disability determinations." True as that may be, the ALJ is nonetheless permitted to consider the degree of support a medical opinion has from objective medical evidence, which in this case, were Dr. Holland's treatment notes as neither he, nor Plaintiff, cited to any other evidence for the basis of his conclusions. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

Thus, the ALJ properly gave this opinion "little weight" as it was "brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. Substantial evidence supports this as Dr. Holland had repeatedly noted that Plaintiff was "doing well"[5] and had failed to note any difficulties Plaintiff was having throughout the

---

[5] Plaintiff argues that the ALJ improperly "cherry-picked" this evidence. (Pl. Br. at 14.) The Court finds this argument unpersuasive as in five out of the seven appointments following his initial appointment with Dr. Holland, Plaintiff was noted as "doing well." Despite having gotten into fights, during each subsequent appointment to a fight, Plaintiff

course of treatment. Dr. Holland's notes do reflect a few instances of fighting, but do not indicate how those instances would give rise to the "severe" limitations concerning all work-related aspects of Plaintiff's functioning And, they further reflect at least occasionally that he was not in compliance with his medicinal regime on those occasions.

      2.      **The ALJ properly considered the opinion of Dr. Ivan Engel, a treating physician, in determining the Plaintiff's symptoms worsened on March 6, 2017 and not before.**

In an assessment identical to the one Dr. Holland completed, Dr. Engel opined that Plaintiff had "moderately severe" to "severe" psychiatric impairments. (R. at 566–567.) He further opined that based on these impairments, Plaintiff would be off task at least 21% of an eight-hour workday. (R. at 567.) The ALJ gave this opinion "significant weight" and found it supported the worsening of Plaintiff's symptoms in March 2017 and that Plaintiff would be off task at least 16% of the workday. (R. at 25.)

Plaintiff does not dispute the weight assigned to this opinion. Rather, Plaintiff contends that this opinion should have established that Plaintiff's disability began before December 31, 2015, his DLI. (Pl. Br. at 19.) Specifically, Plaintiff argues that the ALJ offered "no analysis show[ing] opined to limitations to be of a lesser degree prior to the DLI." (Pl. Br. at 19 Nevertheless, the ALJ does give an acceptable reason for limiting acceptance of Dr. Holland's opinion as to the date of the onset of disability[6]. And, the ALJ's opinion does indicate the date that she believed the disability began--March 7, 2017--the date of one of the Claimant's counseling intake assessments. It is on that date, the ALJ determines that the medical records reflect that the claimant began more consistently experiencing irritability and anger, a tangential thought process, memory impairment and slowed, slurred speech. Subsequent evaluations provided additional evidence of a disability and are cited by the ALJ (R. at 25) Plaintiff makes no attempt to demonstrate that these evidences of the onset of disability actually consistently manifested themselves prior to that date.

---

was noted as doing well. (R. at 472–488.)
[6] Dr. Engel did not opine as to the date of the disability's onset.

Further, in diagnosing Plaintiff with paranoid schizophrenia, Dr. Engel noted that Plaintiff experienced hallucinations and paranoid ideations. (R. at 739.) However, while under the care of Dr. Holland from January 2015 to January 2016, Plaintiff explicitly denied having any visual or auditory hallucinations or paranoid thoughts. (R. at 472–488.) Thus, substantial evidence does not support the notion that the condition diagnosed by Dr. Engel, namely, paranoid schizophrenia and anxiety, is the same "pre-expiration condition" diagnosed by Dr. Holland, which was major depression and generalized anxiety disorder. (R. at 476, 739.) While the two doctors' diagnoses share a common element of anxiety, the reported symptoms by Plaintiff and the doctors' clinical impressions of those symptoms differ vastly, thus warranting a diagnosis of schizophrenia in one instance and not in the other. As such, the ALJ did not err in failing it to give it greater weight in establishing disability prior to December 31, 2015.

**B.   The ALJ articulated a specific, clear, and convincing reason for rejecting Plaintiff's symptom testimony for the period prior to March 6, 2017.**

The ALJ found the following testimony "not fully supported" by the record prior to March 6, 2017:

> The claimant alleges disability due to a combination of mental impairments. In particular, the claimant testified that he has been diagnosed with paranoid schizophrenia and that he hears voices. He further testified that he has significant difficulty getting along with others. He also testified that he has difficulty to [sic] concentration and focus. Finally, he testified that his medications make him sleepy.

(R. at 23; *see* R. at 40, 47, 48, 49.) In evaluating the credibility of a claimant's pain and symptom testimony, the ALJ must engage in a two-step analysis. First, she must determine whether the claimant has produced objective medical evidence of an underlying physical or mental impairment. 42 U.S.C. § 423(d)(5)(A). Second, unless there is evidence that the claimant is malingering, the ALJ must provide specific, clear, and convincing reasons for rejecting pain and symptom testimony associated with the underlying impairment. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Here, because the ALJ found underlying

mental impairments of "persistent depressive disorder, major depressive disorder, general anxiety disorder, schizophrenia, other specified anxiety disorder, and panic disorder," (R. at 20) and cited no evidence of malingering, she must provide specific, clear, and convincing reasons to reject Plaintiff's symptom testimony.

The ALJ may consider the claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin., Comm'r*, 119 F.3d 789, 792 (9th Cir. 1997). General findings pertaining to a claimant's credibility, however, are not sufficient. *See Lester v. Chater*, 81 F.3d 821 (9th Cir. 2005). Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In doing so, the ALJ need not engage in "extensive" analysis, but should, at the very least "provide some reasoning in order for [a reviewing court] to meaningfully determine whether [her] conclusions were supported by substantial evidence." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). In the context of mental health issues, "[c]ycles of improvement and debilitating symptoms are a common occurrence." *Garrison*, 759 F.3d at 1017. As such, an ALJ must not simply "pick out a few isolated instances of improvement over a period of months or years and [] treat them as a basis for concluding a claimant is capable of working." *Id.* Rather, "[r]eports of improvement in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of [his] symptoms." *Id.*

Plaintiff alleges that the ALJ selectively omitted discussion of certain evidence that would support a finding of disability prior to December 31, 2015. (Pl. Br. at 14.) Specifically, Plaintiff alleges that the ALJ did not discuss fights he got into in May and August 2015, his arrest and incarceration in October 2015, nor his psychiatric hospitalization in "May or June" 2015. (Pl. Br. at 14.) These allegations, however, are not entirely correct.

While the ALJ did not conclude disability based on Plaintiff's fights or incarcerations, she did take them into account at step three in determining whether his impairment(s) met or medically equaled the severity of an impairment in Appendix 1 to Subpart P of 20 C.F.R. Part 404. (R. at 21.) Specifically, she found Plaintiff had "moderate" limitation with respect to "interacting with others" based on "a few instances where he became angry with others." (R. at 21.) (citing R. at 477, 479, 485.) She also considered, however, that his "providers consistently noted that he was cooperative." (R. at 21.) Likewise, the ALJ considered Plaintiff's incarcerations in assessing any limitation with respect to "adapting or managing oneself." (R. at 22.) Also citing the previously mentioned fights, she found that he had "moderate" limitation here. (R. at 21–22.)

Plaintiff is correct, however, in pointing out that nowhere did the ALJ discuss his apparent psychiatric hospitalization in "May or June" 2015. However, Plaintiff also points out that the "treatment records are not part of the current transcript." (Pl. Br. at 3.) Indeed, the only documentation of the alleged hospitalization in the record before the Court is Plaintiff's checkbox response to a health assessment questionnaire from the Maricopa County Jail on July 13, 2015 in which he indicated he had been hospitalized for a "mental health or emotional problem" two months ago prior. (R. at 445, 448.) Without more, the Court finds that this checkbox response does not constitute "substantial evidence" of the alleged hospitalization. As such, the ALJ was not obligated to consider it.

Plaintiff contends that the ALJ improperly "cherry-picked" evidence from Dr. Holland's treatment notes to impeach his testimony. (Pl. Br. at 14. 23.) For reasons already discussed, Dr. Holland's treatment notes do not support the alleged severity of Plaintiff's impairments. More specifically, Dr. Holland did not note any hallucinations or paranoid thoughts, nor did he note that Plaintiff suffered from schizophrenia, which had not been diagnosed until July 2017 by Dr. Engel. Moreover, Dr. Holland did not document any issues with concentration or sleepiness due to medication. Rather, as previously discussed, he found Plaintiff's thought process organized and his intellectual functioning average. Thus, Dr. Holland's notes are not substantial evidence supporting his testimony.

However, substantial evidence in the record contradicts Plaintiff's testimony for the relevant period. During a psychological evaluation on September 19, 2016, Plaintiff stated that Dr. Holland, after a "rocky start," had found a medication that did not make him "depressed and angry all the time." (R. at 572.) He stated that medications are extremely helpful to him. (R. at 571.) He further stated, "Dr. Holland is a great doctor" who made him "feel better." (R. at 572.) Moreover, the evaluator noted no signs of psychosis and Plaintiff denied experiencing any symptoms of psychosis. (R. at 572.) During this evaluation, Plaintiff's grooming was "adequate"; his cooperation was "good"; his speech was "normal"; his thought processes were "logical/coherent"; and his judgment and insight were "good." (R. at 575.) The evaluator gave a "provisional diagnosis" of "depressive disorder" and "panic disorder." (R. at 577.)

As of March 6, 2017, however, Plaintiff's testimony was supported by more recent objective evidence. (R. at 25.) Specifically, the ALJ found that Plaintiff began experiencing irritability and anger issues on a "more consistent basis," citing treatment notes from Dr. Engel. (R. at 25.) These records showed that Plaintiff was experiencing tangential thought processes, paranoid ideations, memory impairment, and psychosis. (R. at 25.) Moreover, his appearance was "tattered"; he exhibited poor eye contact; and he spoke unintelligibly. (R. at 25.) He also had barricaded his wife in the bathroom and threatened her during this period. (R. at 25.) All of this supports Plaintiff's testimony.

While the record shows Plaintiff has had ongoing struggles with mental issues, these mental issues did not become work preclusive until March 6, 2017, as properly found by the ALJ. Prior to then, various psychological professionals had noted that while he had some impairments, overall, Plaintiff was functional as evident by an organized and coherent thought process and average to good insight. The diagnosis of schizophrenia and the hearing of voices came later than December 31, 2015. Thus, the ALJ did not err in concluding that the objective evidence prior to March 6, 2017 did not support the Plaintiff's testimony.

/ / /

**IT IS THEREFORE ORDERED** affirming the June 11, 2018 decision of Administrative Law Judge Kelly Walls, as upheld by the Appeals Council on August 13, 2018.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this matter.

Dated this 20th day of November, 2019.

G. Murray Snow
Chief United States District Judge